## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MONTGOMERY WARD, LLC, | ) Case No. 00-4667 (KG) |
| et al., | ) (Jointly Administered) |
| | ) |
| Reorganized Debtors. | ) **Re Dkt No. 1748** |

### MEMORANDUM OPINION[1]

The controversy *sub judice* is between the Plan
Administrator and the PA Committee of Montgomery Ward, LLC
("Plan Administrator"), and DigiVision Satellite Services
("DigiVision").  The issue is whether a release in a
settlement agreement constitutes a waiver of DigiVision's
administrative claim.  The Court finds that DigiVision did not
waive its administrative claim.

### FACTS

### A.  Background

On December 28, 2000, Montgomery Ward, LLC, and all of
its direct and indirect subsidiaries ("the Debtors") filed for
bankruptcy protection in this Court pursuant to Chapter 11 of
the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*  On August 6,

---

[1]  This Memorandum Opinion constitutes the findings of fact
and conclusions of law required by Federal Rule of Bankruptcy
Procedure 7052.

2002, the Court (Judge Peter J. Walsh, then presiding) entered an Order confirming the Third Amended Plan of Liquidation ("the Plan") [D.I. 3593].  The Plan created the positions of the Plan Administrator and PA Committee, and gave them the exclusive right to make and prosecute objections to claims against the Debtors' estates.

## B.  DigiVision Claims

DigiVision managed and performed installation of DIRECTV satellite dishes and receivers ("DIRECTV") for Debtors who, in turn, had agreements with DIRECTV that authorized Debtors to sell DIRECTV programming packages to customers on a commission basis.  DigVision used subcontractors to perform the work.

DigiVision timely filed two claims against Debtors' estates: an unsecured claim (No. 65429) for prepetition services in the sum of $546,775 ("the Unsecured Claim"), and later an administrative claim in the sum of $170,760 ("the Administrative Claim").

On March 15, 2001, Debtors, DIRECTV, Inc. ("DIRECTV")[2] and DigiVision entered into an agreement ("the Settlement

---

[2]    DIRECTV asserted an unsecured claim against Debtors' estates of approximately $740,000.  DIRECTV was not a party to any of the agreements between Debtors and DigiVision.

2

Agreement") whereby, inter alia, DIRECTV, on Debtors' behalf, paid DigiVision the sum of $480,200.  Several days before the execution of the Settlement Agreement, Debtors filed a Motion to Compromise Claims with Hughes Network Systems and DIRECTV [D.I. 880] ("the Motion to Compromise") for the settlement of claims.  The Motion to Compromise was expressly,

> . . .a compromise of certain claims among Debtors, Hughes Network Systems. . .and DIRECTV.

The Motion to Compromise further provided that:

*      *      *

> 12. Further, DIRECTV will pay DigiVision $480,200 in satisfaction of installation services provided to the Debtors' customers during the month of December 2000.  This payment to DigiVision will result in the elimination of DigiVision's prepetiton general unsecured claim against the Debtors.

*      *      *

> 17. Further, payment of the DigiVision installation charges by DIRECTV will eliminate a significant general claim against the estates.

The Settlement Agreement, which is dated after the Motion to Compromise, provided that:

> 5. <u>Payment to DigiVision</u>.  Within five (5) business days after the date on which the Approval Order becomes final and not subject to appeal, DIRECTV will pay DigiVision, on behalf of the Debtors, via wire transfer instructions provided by DigiVision, the amount of $480,200.00 in full and final satisfaction of any and all amounts due and owing or to become due from each of DIRECTV or the Debtors to DigiVision.

> 6. <u>Mutual Releases.</u> ["the Release"] Except for the obligations under this Agreement, DIRECTV, the Debtors, and DigiVision hereby mutually release, remise, acquit and forever discharge each other and their respective officers, directors, shareholders, employees, attorneys, agents, representatives, affiliates, subsidiaries, parents, heirs, predecessors, successors and assigns, form any and all suits, debts, obligations, claims, sums of money, damages, demands, in law or in equity, in existence as of the date hereof, whether known or unknown relating in any way to DIRECTV's and/or DigiVision's business relationship with the Debtors.

The Court approved the Settlement Agreement by Order, dated March 28, 2001 (D.I. 973).

DigiVision filed the Administrative Claim three months later, June 29, 2001[3], to which Debtors objected, asserting that the Court should expunge the Administrative Claim as having been satisfied and released under the Settlement Agreement.

## **DISCUSSION**

DigiVision argues that it compromised only the Unsecured Claim in the Settlement Agreement, and not the Administrative Claim. The Plan Administrator points to the broad language of the Release and urge the Court to find that the Administrative Claim was barred by the Settlement Agreement.

DigiVision relies upon the Motion to Compromise which references only the Unsecured Claim and makes no reference to the Administrative Claim. The issue, therefore, is whether the Settlement Agreement and, in particular, the Release, includes the Administrative Claim.

The Release provides that the payment was "in full satisfaction of any and all amounts due and owing or to become due from each of DIRECTV or the Debtors to DigiVision."

---

[3]   See Motion for Allowance and Request for Administrative Expense Under 11 U.S.C. § 503(b) (D.I. 1748).

The Settlement Agreement is dated March 15, 2001; the Administrative Claim is for work DigiVision performed between December 29, 2000 and April 30, 2001. Therefore, at least a portion of the Administrative Claim was for services after the Release.

The Settlement Agreement and the Motion to Compromise are very clear: the settlement payment of $480,000 was in payment of the Unsecured Claim only. The Settlement Agreement and the Motion to Compromise do not mention the Administrative Claim which is not surprising since DigiVision was continuing to do work on Debtors' behalf and the Administrative Claim had not ripened. More to the point, the Settlement Agreement and the Motion to Compromise make specific reference to the Unsecured Claim.

The Motion to Compromise further states that (¶ 9):

> HNS, DIRECTV and Debtors have negotiated a resolution of these issues. . .

"These issues" refers to Debtors' disputes with HSN and DIRECTV, and there is no reference to any dispute with DigiVision. The Motion to Compromise also reveals that DigiVision was not included in the settlement negotiations.

The preamble to the Motion to Compromise reveals that the Motion to Compromise involved:

> . . .a compromise of certain claims among Debtors, Hughes Network Systems (a division of Hughes Electronics Corporation) ("HNS") and DIRECTV. . .

There is no mention of DigiVision.

The Court is fully satisfied that the Release covers only DigiVision's Unsecured Claim and not the Administrative Claim. The parties' choice of law under the Settlement Agreement is Michigan law. Under Michigan law, the construction of an unambiguous contract, and a release is a contract, is a question for the court. *Meridian Mutual Insurance Co. v. Mason Dixon Lines, Inc.*, 1999 WL 33455032 (Mich. App. 1999), *Automobile Club Inc. Ass'n v. Page*, 413 N.W.2d 472 (Mich. App. 1987). The court must determine the scope of the release from the parties' intent as expressed in the release. *Wyrembelski v. City of St. Clair Shores*, 553 N.W.2d 651 (Mich. App. 1996). Significant here, Michigan courts "will look beyond the language of the release to determine the fairness of the release and the intent of the parties on executing it." *Meridian Mutual Insurance* at *3.

7

It is clear from the Settlement Agreement that DigiVision was not a participant in the settlement discussions which culminated in the Settlement Agreement. Next, the Settlement Agreement refers only to the Unsecured Claim, and the settlement payment of $470,000 is a significant reduction. Debtors also knew that DigiVision performed work post-petition and were certainly capable of expressly referring to an administrative claim had they intended to settle that claim as well. Finally, Debtors benefitted financially from the post-petition efforts of DigiVision and for which DigiVision seeks payment of the Administrative Claim. For all of these reasons, and applying Michigan law which requires the Court to consider all of the facts to determine the parties intent, the Court finds that DigiVision's Administrative Claim is not barred by the Release. The issue of the appropriate allowed amount of the Administrative Claim will have to be adjudicated and is governed by the accompanying Order.

Dated: December 10, 2007

KEVIN GROSS, U.S.B.J.

8